FALKENHEINER, Judge Pro Tem.
In this workmen’s compensation case, the Trial Court found that the plaintiff-appellant had suffered a mild exposure to phosgene gas on June 2, 1982, and awarded him temporary, total disability for the period from June 2, 1982, until November 8, 1982, when it was determined that he could return to work.
Plaintiff-appellant has appealed, alleging that he suffers a permanent partial disability as defined in LSA-R.S. 23:1221(3). Plaintiff-appellant also contends that even if the court finds that his disability to work was temporary, that he is, nevertheless, entitled to medical benefits beyond November 8, 1982, because he was still on the medical treatment.
FACTS
At the times pertinent to this case, Sonnier was a construction electrician, 26 years old, working pursuant to union assignments with various companies engaged in construction projects in the petro-chemical industry. On June 2, 1982, he was an employee of Epic Instruments, Inc., which has insurance with United States Fidelity & Guaranty Company covering its workmen’s compensation liability.
Epic has a construction contract for work on the Conoco facility in Calcasieu Parish, and Sonnier was engaged in that work. The Olin Refinery is located across Interstate Highway Number 10 from the Conoco plant where Sonnier was working. A leak of phosgene gas occurred at the Olin Refinery, and some of that gas drifted over to Sonnier’s work location where he and others were exposed to it. They were taken to St. Patrick’s Hospital in Lake Charles for observation and were treated and released. Sonnier continued to experience vision problems and first saw a Dr. Looney, but the next day he went to Dr. Roberts who was his treating physician for this alleged injury, and who ordered him hospitalized for observation and oxygen treatments. Sonnier was also examined two times by Dr. Kaimal, a pulmonary specialist, who, with Dr. Roberts, referred him to another specialist, Dr. Stephens in Houston. Sonnier was also examined by Dr. Jones, a pulmonary specialist in New Orleans, at the request of defendant.
Sonnier was married approximately three months after the accident and had resumed work full time by November 8, 1982. He complained of shortness of breath in hot, humid weather and stated that irritants such as dust and industrial pollutants aggravated his problems. At the time of trial, he was employed full time in Austin, Texas.
Sonnier’s case is based on documentary exhibits relating to his medical examinations and treatment. These exhibits include reports of Drs. Roberts and Stephens who did not testify. Sonnier, his wife, four friends, and Dr. Kaimal testified in his behalf.
The defendants presented the testimony of Dr. Jones through a deposition and the testimony of Dr. Anderson, a general practitioner who had treated Sonnier for many years and was his personal physician until this accident.
OPINION
All of the medical, and all of the lay testimony, indicate that Sonnier is now suffering from a mild case of asthma. None of the evidence indicates that he has any lung or pulmonary tract injury. The central issue in this case is whether Sonnier’s asthma and present condition was caused by the exposure to the phosgene gas on June 2,1982. The Trial Court found it was not; we agree and affirm.
The solution to the issue in this case is a question of fact and involves a decision of *286 whether to accept the evidence offered by Sonnier that his asthma was caused by the phosgene exposure, or the evidence offered by defendants to the contrary. The Trial Court obviously accepted the defendant’s evidence and we believe that he was correct in doing so. There is certainly no manifest or obvious error.
“All of the issues before the court depend upon whether there is a reasonable factual basis for the trial court’s finding. An appellate court should not disturb the findings of fact of the trial court in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973), Reck v. Stevens, 373 So.2d 498 (La.1979).”
Arteck Services v. Crownpoint Industries, Inc., 473 So.2d 345 (La.App. 5th Cir. 1985).
Sonnier’s strongest evidence is found in the testimony of Dr. Kaimal, who saw him twice. He was of the opinion that Sonnier suffered from mild asthma and some impairment of pulmonary functions, all of which responded to medications prescribed in asthma cases. He further was of the opinion that this asthma was caused by the phosgene exposure. The basis of his opinion was strictly one of cause and effect. In other words, Dr. Kaimal assumed that Son-nier had had no prior asthma, asthmatic symptoms, or other pulmonary problems prior to the phosgene exposure, and that since he now had those problems, the phos-gene exposure must have been the cause. On direct examination he testified:
“Q. Now, assuming that prior to June 2, 1982 that he was able to work in a chemical atmosphere here as a construction worker across the river and had no problems, was able to do his work and so on and had no asthma at that time, and that he was exposed to phosgene on June the 2nd, 1982, and he now has been definitely diagnosed as having asthma. Do you feel in your expert opinion that the asthma which he has now and the problems he now has was probably caused or there’s a causal connection between it and the phosgene exposure on June 2, ‘82?
A. Yes sir.” (Emphasis added.)
Transcript pages 386-387.
The record further reflects that Dr. Kaimal had assumed that Sonnier was free of any pulmonary problems prior to the phosgene exposure. His records of his examination of Sonnier, as well as those of Drs. Roberts and Stephens, all indicate that Sonnier had reported to them no history of asthma or any pulmonary problems. (For example see Transcript pages 51 and 52.)
However, the defendants presented the testimony of Dr. Anderson, Sonnier’s family physician who had treated him for many years. Dr. Anderson testified extensively about Sonnier’s prior physical problems, including breathing and other pulmonary problems which had existed at least as early as 1973 when Sonnier was 17 years old. At that time, Dr. Anderson had caused x-rays to be made of Sonnier’s lungs. The report of the radiologist on February 26, 1973, stated:
“(T)he lung fields appear somewhat emphysemadous with no evidence of active infiltrate.” (See Transcript page 372.)
The doctor further testified that this interpretation meant that the lung problem could have been precipitated by emphysema, by asthma, by allergy, and by infection. (See Transcript page 373.)
After Dr. Anderson had testified, Dr. Kaimal testified to the following on cross-examination wherein he modified the opinion which he had given on direct examination:
“Q. Dr. Kaimal, you were sitting here when Dr. Anderson just testified talking about how in 1973 this gentleman went into his office with shortness of breath and a tightness in his chest and with no apparent explanation for it. Does that sound like to you that the man was having an episode of asthma or an asthma attack at that time?
A. It’s quite possible.
Q. Then when you consider the allergic problems the man had had through the *287 years, is that in some way associated with an asthma condition?
A. Yes.”
(Transcript pages 389-390.)
The reports of Dr. Stephens, a Houston specialist, who did testify, verifies that although Sonnier did not report any history of asthma or allergy problems to him, there was a distinct possibility of prior pulmonary problems, including asthma, which were aggravated to some extent by the phosgene exposure.
The testimony of Dr. Jones, the New Orleans pulmonary specialist, was unequivocal that exposure to phosgene could not cause asthma. Dr. Jones stated that the phosgene was a bronchial irritant that could precipitate asthmatic attacks and could also cause, under proper conditions, permanent lung damage. He stated that within 24 hours after exposure to phosgene that all effects should be apparent and that he would not expect anyone to develop pulmonary edema or even serious bronchitis beyond 24 hours of exposure. He further indicated that he expected full recovery in a short time after a mild exposure which did not cause any permanent lung damage. (See Transcript page 223, et seq.)
The second issue raised by Sonnier in this appeal is with respect to his right for continued payment of medical benefits which he claims to be separate and apart from any determination of his permanent disability. The Trial Court was also correct in terminating these benefits as of November 8, 1982, because there is no evidence in this record that the medication received by Sonnier was for the effect of the phosgene exposure. The medication was for control of his mild asthmatic condition which, for reasons stated above, the record clearly shows existed independent of the phosgene exposure.
The judgment of the Trial Court is affirmed.
AFFIRMED.